IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 6, 2001

IN THE MATTER OF:
C.L.H., DOB, 7/23/95 AND L.L.H., JR., DOB, 9/12/97

Appeal from the Juvenile Court for Dickson County
No. 01-98-001-CC    A. Andrew Jackson, Judge

No. M2000-02799-COA-R3-JV - Filed June 5, 2001

The juvenile court of Dickson County granted a petition to terminate the parental rights of the natural parents of two children. The parents raise several issues on appeal, including (1) the juvenile court's refusal to grant a continuance, and (2) the court's conclusion that the grounds for termination were proved by clear and convincing evidence. We affirm the termination of parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, Jr. and WILLIAM B. CAIN, JJ. joined.

Timothy V. Potter, Dickson, Tennessee, for appellant, J.M.S.

J. Reese Holley, Charlotte, Tennessee, for the appellant, L.L.H.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, Department of Children's Services.

**OPINION**

**I.**

The appellants, J.M.S. ("Mother") and L.L.H. ("Father") are the parents of C.L.H., born July 23, 1995, and L.L.H., Jr., born September 12, 1997. The appellants were not married, and they lived with Father's parents. On December 29, 1997, L.L.H., Jr. was taken to the hospital in Dickson, Tennessee. The three-month-old boy had a spiral fracture to his right femur. Father reported that he accidentally sat on the child and heard an "audible pop." L.L.H., Jr. was transferred to Vanderbilt Hospital where the treating physician recorded that the fracture was an "unusual fracture type for history of trauma given. Must consider non-accidental trauma." The hospital also discovered that

L.L.H., Jr. also had a buckle fracture to his right tibia. The attending physician at the hospital noted that these two injuries were the result of different incidents. The Department of Children's Services ("DCS") was notified of the situation.

DCS filed a Petition for Temporary Custody on January 2, 1998. The Dickson County Juvenile Court entered a Protective Custody Order that same day and gave DCS temporary custody of the children. The Juvenile Court conducted a hearing on January 5, 1998 and entered an order continuing DCS's temporary custody and allowing placement into foster care. The children were placed in the custody of their maternal grandmother February 25, 1998.

DCS set up a permanency plan for each child outlining the actions that Mother and Father needed to take in order to regain custody of their children. This permanency plan was revised periodically during the time the children lived with their grandmother. The DCS caseworker met with Mother and Father to discuss the plans, and to arrange visits with the children. At first, DCS supervised the visits, but eventually, the visits between the mother and children were supervised by the grandmother. The father was never allowed to visit with the children without DCS supervision.

Father was unavailable to meet with the DCS caseworker and visit the children for approximately the first year because he was in jail for a parole violation and a charge for statutory rape. The caseworker went to the jail to explain the permanency plan to the father. After his release in January of 1999, he visited with the children six times before the October review conducted by DCS. He was very uncooperative with DCS regarding the responsibilities included in the permanency plan, and he quit visiting the children in November of 1999. Mother was very diligent about visiting the children and often brought them gifts. She also worked with DCS in order to meet the goals included in the permanency plans, so she could regain custody of the children. The October 1999 report from the DCS Review Board included the following entry in the section labeled "Recommendations:" "Plan of Care was stressed and both parents were urged to work the plan before the next six month review. We made it clear that the possibility of termination for parental rights could take place."

On February 29, 2000, DCS scheduled another meeting to discuss the permanency plan. Despite being notified by letter, neither Mother nor Father attended the meeting. In a letter to the trial court, the DCS caseworker informed the court that Mother continued to live with Father. The letter also stated that the grandmother decided she was unable to keep the children on a permanent basis. When she originally took the children, she believed that Mother would eventually regain custody of the children, but the grandmother did not think that was possible now, because Mother would not leave Father. The grandmother believed that the children should be adopted.

On April 17, 2000, DCS filed a Petition to Terminate Parental Rights. The court appointed counsel for the mother and father on July 14, 2000, and set the hearing on the termination petition for July 26, 2000. The petition prayed for the following relief:

That at the hearing of this cause, Your Honor decree [sic] that pursuant to T.C.A. § 36-1-113(g)(1), the Defendants, J.M.S. and L.L.H., have willfully abandoned the children, C.L.H. and L.L.H., Jr., for more than four (4) consecutive months next preceding the filing of this Petition; and, that the Defendants, J.M.S. and L.L.H., have abandoned the children, C.L.H. and L.L.H., Jr., pursuant to T.C.A. § 36-1-113(g)(3)(A) et. seq.; and, that the Defendant, L.L.H., has met the conditions set out in T.C.A. § 36-1-113(g)(5) [or T.C.A. § 36-1-113(g)(6)]; and further, that pursuant to T.C.A. § 36-1-113(g)(2), the Defendant, J.M.S., has failed to comply with the Statement of Responsibilities as provided in the Plan of Care entered into by said Defendant with the State of Tennessee, Department of Children's Services. That a Decree be entered forever terminating all of the parental rights which said Defendants may have to said children and award the complete custody, control and guardianship of said children to the State of Tennessee, Department of Children's Services, with the authority to place said children for adoption and to consent to such adoption in *loco parentis*.

Counsel for the appellants filed a motion for a continuance on the day of the hearing. The motion stated that they had been unable to speak with the doctor who reported L.L.H., Jr.'s injury to DCS. They argued that the State could not go forward with its case without testimony from the doctor because the petition was based upon the permanency plan which included the provision that Mother and Father had to admit to their son's abuse. The State's counsel stated that the State could proceed without proving again that the abuse actually occurred, and the trial court allowed the appellee to orally amend its petition at that time. The appellee stated that the grounds of the petition were (1) substantial non-compliance with foster care and (2) persistence of conditions. The appellants then argued that the abuse was one of the persistent conditions. The court replied that he had already decided that the children were abused when they were removed, so the abuse was not in question.

The trial court ruled from the bench and entered an order terminating the appellants' parental rights. The court found that the father had abandoned the children and that the conditions which caused the children to be removed from the home persisted. Mother continued to live with Father, and Father had done absolutely nothing in order to complete the terms of the permanency plan. The court stated that the mother had made her choice, and it was in the children's best interest for the parental rights to be terminated.

**II.**

Mother's issues on appeal are: (1) whether the appellant was denied her right to counsel pursuant to Rule 39, Tennessee Rules of Juvenile Procedure, and Rule 13(d)(7) of the Rules of the Supreme Court; and (2) whether the State of Tennessee, Department of Children's Services, has proven by clear and convincing evidence that the termination of parental rights statute, Tenn. Code Ann. § 36-1-113 and the "best interest" of the children require the termination of the mother's parental rights. Father's issues on appeal are: (1) whether the trial court erred in not granting a

Motion to Continue the Hearing of Termination of Parental Rights when counsel for Father had only been appointed for twelve (12) days prior to the said hearing; (2) whether the trial court erred in granting the Termination of Parental Rights against Father on the grounds of abandonment when the trial court granted the State's amendment to the petition in open court to proceed solely on the grounds of non-compliance with the plans of care and persistence of conditions; (3) whether the trial court erred in ordering Termination of Parental Rights on abandonment where the State did not provide proper evidence that the consequences of abandonment had been properly administered to Father; and (4) whether clear and convincing evidence existed to warrant the termination of parental rights.

When a parent's rights are terminated, both the grounds for termination and the fact that the action is in the best interest of the child must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c). The "clear and convincing evidence" standard is a higher standard than that of preponderance of the evidence; it "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995)(citations omitted).

### III.
### RIGHT TO COUNSEL/MOTION TO CONTINUE

Both Mother and Father argue that the trial court erred when it denied their motion for a continuance based on the fact that their attorneys had been appointed twelve (12) days prior to the hearing. Mother and Father filed affidavits of indigency on July 5, 2000. The attorneys were appointed July 14, 2000 and the hearing was held July 26, 2000. At the hearing, counsel argued that they needed a continuance to fully prepare for trial. On Monday, July 24, counsel had tried to call Dr. James Gay, who treated L.L.H., Jr. at Vanderbilt and referred the case to DCS. The attorneys for Mother and Father wished to take Dr. Gay's deposition on the issue of L.L.H., Jr.'s abuse. The trial court denied the motion to continue because the State was proceeding on the grounds that the parents did not comply with the permanency plan and that the trial court had already found L.L.H., Jr. to be abused when the children were removed from the home. The trial court decided that the previous abuse was not at issue in the case, so the testimony of the doctor was not necessary. Mother's attorney also argues on appeal that there was not time to identify and subpoena necessary witnesses.

The appointment of counsel for indigent defendants in termination of parental rights cases is based on Rule 39(f)(2) of the Rules of Juvenile Procedure and Rule 13(d)(7) of the Rules of the Supreme Court. Rule 39(f)(2), Tenn. R. Juv. Proc. states:

> At the beginning of the hearing, any party who appears without an attorney shall be informed of the right to an attorney, and in the case of an indigent respondent, the court shall consider the facts and circumstances alleged and make a determination as to whether an attorney should be appointed.

Rule 13(d)(7), Tenn. R. Sup. Ct., states:

> (d) In the following cases and in all other cases required by law, the court shall advise any party who is without counsel that he or she has the right to be represented by counsel throughout the case and that counsel will be appointed to represent the party if he or she is indigent and requests the appointment of counsel.
>
> . . . .
>
> (7) In cases under Title 37 of Tenn. Code Ann. in which allegations against the parents could result in finding the child dependent or neglected, or in which there is a petition for termination of parental rights.

The issue is whether or not allowing only twelve days between appointment and the hearing denied to the parties their right to effective assistance of counsel. We addressed a similar issue in *State v. Pruitt, In re A.J.P.*, 2000 WL 827957 (Tenn. Ct. App. 2000). In *Pruitt*, the mother's counsel was appointed two months before the trial on termination of her parental rights. This court stated, "Giving [Tenn. R. Sup. Ct. 13(d)(7)] its intended effect requires that counsel be appointed long enough before trial for adequate trial preparation. The purpose of appointing counsel is to insure that Mother is adequately represented in judicial proceedings." *Pruitt*, 2000 WL 827957, * 8.

The reason given for the continuance was a desire to contest the fact that any abuse had occurred by deposing the doctor who had initially concluded that L.L.H., Jr. had been abused. The trial judge denied the motion because the State had already proved the fact of abuse in obtaining the original custody order. We think the trial judge was correct. The fact that L.L.H., Jr. had been abused was the sole reason for removing the children from the home. Every plan of care promulgated by DCS included a requirement for the parents to take responsibility for the abuse and to seek treatment so that after reunification, the abuse would not occur again. The parents signed the initial plan and received copies of all subsequent plans. Mother signed all the plans except the last one when neither she nor the father attended the staff meeting. For over two years the fact of abuse had not been contested.

Whether to grant a continuance rests in the discretion of the trial judge. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413 (Tenn. 1997). Absent an abuse of discretion, the trial court's decision should not be overturned. *Id.* In general, to show an abuse of discretion in denying a continuance a party must show some prejudice or surprise. *Barber & McMurray, Inc. v. Top-Flite Development Corp. Inc.*, 720 S.W.2d 469 (Tenn. Ct. App. 1986). Other than the inability to depose the doctor, the appellant's have not identified any prejudice from the denial of the continuance. Therefore, we do not think the court erred in refusing to grant it.

## IV.
### FATHER'S ABANDONMENT OF CHILDREN

Father also argues that the State did not prove that the consequences of abandonment had been adequately explained to him. Father relies on Tenn. Code Ann. § 37-2-403(a), subsections (2)(A) and (2)(B)(i) which require that for children placed in foster care the permanency plan shall include the definitions of "abandonment" and "abandonment of an infant" and the criteria and procedures for termination of parental rights. Subsection (2)(B)(i) also requires the court to explain to the parents on the record the consequences of abandonment. Subsection (2)(B)(ii) provides that the State may, nevertheless, proceed on the ground of abandonment if it can establish (1) that the parents signed the permanency plan including the required information or that the court at a subsequent hearing gave the required explanation (Subsection (2)(B)(ii)(a)); or (2) that the agency had presented the required information on abandonment to the parents prior to the termination, or had attempted to, and the parents had refused it (Subsection (2)(B)(ii)(b)); or (3) the agency describe in detail its diligent efforts to give the parents the required information (Subsection (2)(B)(ii)(c)).

We have searched in vain for the required definitions in any of the permanency plans or where the required information was given to the parents in open court. The permanency plans are otherwise filled with pertinent information, and we have no doubt that DCS attempted to comply with the statute, but the record simply does not show it. Therefore, we have to conclude that the court erred in finding that either or both of the parents had abandoned the children.[1]

## V.
### CLEAR AND CONVINCING EVIDENCE

There are other grounds, however, for terminating parental rights -- if the grounds are shown by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1). In addition to abandonment, termination may be based on substantial noncompliance with the statement of responsibilities in a permanency plan, Tenn. Code Ann. § 36-1-113(g)(2), and/or the child has been removed from the parent's home by court order for six months and: "(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and, which, therefore prevent the child's safe return to the care of the parent(s) or guardian(s), still persist; (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home." Tenn. Code Ann. § 36-1-113(g)(3).

---

[1] Father also asserted in his brief that by amending the termination petition in open court to rely on persistence of conditions, DCS had waived the ground of abandonment. In view of our conclusion that DCS could not rely on abandonment as a ground for termination because of its failure to comply with Tenn. Code Ann. § 37-2-403, we will not address this issue.

The relevant portion of the trial court's order is:

4. These children were found to be dependent and neglected by this Court and were placed in the custody of the Department of Children's Services; the Department made reasonable efforts to prevent removal or the children's situation prevented reasonable efforts from being made prior to removal; the Department has made reasonable efforts to assist the parents to establish a suitable home for the children for a period of four (4) months following the removal, but Respondents have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the children to such a degree that it appears unlikely that they will be able to provide a suitable home for the children at an early date.

5. Against both parents, the Court finds that the circumstances that initially led to the children's removal in January of 1998 still persist today in that the Respondents have never acknowledged or dealt with the severe abuse that the father inflicted on their child. The Court further finds that the children have been removed by order of this Court for a period of six (6) months; the conditions which led to their removal still persist; other conditions persist which in all probability would cause the children to be subjected to further abuse and neglect and which, therefore, prevent the children's return to the care of Respondents; there is little likelihood that these conditions will be remedied at an early date so that these children can be returned to Respondents in the near future; the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home.

6. Respondent, [L.L.H.], has failed to comply with any of the goals of the permanency plan. He was not willing to address any of those reasonable responsibilities related to remedying the conditions which necessitated foster care placement.

In reviewing the history of the case, DCS became involved in the case because of severe physical abuse that the youngest child suffered in the home of the Respondents, and because of that fact, the children came into state custody. The mother, [J.M.S.], was willing to address many aspects of the plan, but she was not willing to address the most important aspects, acknowledging the abuse and separating herself from the perpetrator, L.L.H.. L.L.H. never addressed any of his issues and at the time of this trial, the parties are residing together and do not accept any responsibility for the severe physical abuse. Therefore, the Court finds that the father has not complied with the plan of care and there is no reason to believe that he would comply in [sic] given additional time.

## A.
### PERSISTING CONDITIONS AND REFUSAL TO COMPLY WITH THE PERMANENCY PLAN

The record shows that the trial court removed the children from the appellants' custody because of L.L.H., Jr.'s injury. The trial court determined that Father inflicted the injury. For two years, the permanency plan reflected that conclusion and required both parents to acknowledge the injury and its cause. Neither Father nor Mother admitted that Father caused L.L.H., Jr.'s injury; and there is no reason to believe that they will ever admit it. According to letters from the caseworker to the trial court, Father became belligerent and often left his visitations early. In addition, Father also left a meeting where the parties were discussing the permanency plan. Neither Father nor Mother attended the last meeting to discuss the permanency plan which occurred shortly before DCS filed the petition to terminate parental rights.

Mother fulfilled most of the requirements of the permanency plan. In a letter to the trial court, the caseworker stated, "Since the children were placed in care, [Mother] has been very cooperative with our Department. The permanency plan directed [Mother] to complete several tasks, all of which she has worked on diligently." In his ruling from the bench, the trial judge stated that even though Mother had fulfilled the majority of responsibilities in the permanency plan, he could not return the children to her, as long as she remained with Father. The trial court was of the opinion that the conditions which caused the removal of the children would persist so long as Mother remained with the father.

Therefore, there is clear and convincing evidence that the conditions still persist. The requirements of this section are met in that the children were removed from the home by a court order for a period of six months, the conditions which caused the removal still exist, there is little likelihood that these conditions will be remedied in the near future, and continuation of the parent relationship will diminish the chance of integration into a permanent home.

The trial court also relied upon Tenn. Code Ann. § 36-1-113(g)(2) as a basis for terminating Father's parental rights. Tenn. Code Ann. § 36-1-113(g)(2) states that a, "substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care," can be the basis for termination of parental rights.

As stated above, Father did nothing to complete his responsibilities under the permanency plan. We do acknowledge that he was in jail for part of the time period when DCS had custody of the children and the grandmother was keeping the children. However, there is no evidence in the record that Father made any attempt whatsoever to cooperate with DCS to regain custody of his children. He left his visits with the children early and left meetings to discuss the permanency plan with DCS early. He also failed to attend the final meeting. There is clear and convincing evidence that Father is in substantial noncompliance with the statement of responsibilities in the permanency plan.

While Mother remained in touch with the children and advanced to a point where she enjoyed unsupervised visitation with them, she also failed to comply with the statement of responsibilities in the permanency plan by failing to address Father's responsibility for the abuse. They still live together, and the trial court could not return the children to her under those circumstances.

## B.
### BEST INTEREST OF THE CHILDREN

For a trial court to terminate parental rights, clear and convincing evidence must show that the termination is in the best interest of the child. When making that determination, the trial court may look to the factors listed in Tenn. Code Ann. § 36-1-113(i). The factors which support the trial court's ruling in regard to both Mother and Father are as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

> . . . .

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

> . . . .

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

Tenn. Code Ann. § 36-1-113(i)(1), (2), (5) & (7).

The factors which apply solely to Father are:

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> . . . .

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

Tenn. Code Ann. § 36-1-113(i)(3), (4), & (6).

The weight of these factors is clearly against the parents. In addition to Father's behavior in connection with DCS, Father was charged with statutory rape shortly after the children were taken. The permanency plan also referenced domestic violence issues between Mother and Father, as well as, Father having a potential drug problem. Because Father has shown no evidence of taking responsibility for L.L.H., Jr.'s injury, and Mother remains with Father and enables the conditions to persist, the termination of parental rights is in the best interest of the children. Only then will the children have a chance to become permanently settled in a safe and secure home.

We reverse the trial court's finding of abandonment as a ground for terminating the parents' parental rights. Otherwise the judgment of the lower court is affirmed and the cause is remanded to the Juvenile Court of Dickson County for the enforcement of the judgment and any other proceedings that may become necessary. Tax the costs on appeal to the appellants, J.M.S. and L.L.H.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.